We're probably not going to call time on you, but you need to know that when that yellow light comes on, ordinarily you'd be called down. But we don't have anything else going on today in the Oregon calendar, so we want to fully explore this. We don't want you to get in a hurry about explaining some of the things, because I imagine you've got some questions about it. Okay, so we'll call the first case, and that's Ms. Wang, representing the Winfrey, Richard Winfrey. Good morning, Your Honor. The only question that was left open by the earlier panel in the earlier appeal in this case is whether or not defendant Johnson may be entitled to qualified immunity because he was reckless or deliberate in including false statements and material omissions from his arrest warrant affidavit for Richard Winfrey, Jr. That is the question on which the earlier panel remanded for additional discovery, and that additional discovery revealed that defendant Johnson is not entitled to qualified immunity and that there's a genuine dispute of material facts. That is the only issue before us today. Correct, Your Honor, in this case. So your position is that the district court could not have granted some re-judgment for any other reason and that he was barred by that? Yes, Your Honor. Even if the additional discovery told other things as well? I thought the opinion makes the point that this is the preliminary ruling and more discovery is needed, but it's not meant to be binding for all time for everything, so perhaps you can help me on that. The prior panel did say that on remand the district court could reconsider whatever it believed was necessary for additional discovery. Why didn't that give him freedom, the court freedom, to then look at everything once the additional discovery was performed? The court didn't look at anything else. What it considered were two things, the two things that are relevant to the qualified immunity inquiry. First, whether or not Johnson's actions were reckless or intentional, and second, whether taking out the falsehoods and the material omissions, whether or not there was public cause under the inquiry that this court has used for assessing Frank's claim. And the district court actually found that Defendant Johnson's omissions and falsehoods were, in fact, at least reckless. What it granted summary judgment on was the idea that there was public cause regardless of those things. And that was because of the subsequent prosecution or what? The reason, well, the district court reconstructed the affidavit in the way that this court has instructed in terms of how to do a Frank's inquiry. That is, it took out the falsehoods and it included the material omissions, but the district court found that there was public cause regardless. And it's a little bit difficult to understand how there could have been public cause regardless, because without the falsehoods and, you know, putting the material omissions in there, what was left in the affidavit was the drop trail, or not the drop trail, Pikett's scent lineup, which were called into question by the drop trail, given that the drop trail actually used Christopher Hammond's scent and not Richard Winfrey, Jr.'s scent. And the second thing was Campbell's inconsistencies. And Campbell's inconsistencies, that's David Campbell, the jailhouse snitch, who claimed that Richard Winfrey, Sr. had told him certain things about the crime. Those inconsistencies were, as the prior panel held, clearly material, and they were major inconsistencies. It included not only that, you know, Campbell claimed that Sr. said at first that the kids let him into Murray Burr's house, but then he said later that it was a cousin that let him into Murray Burr's house. Of course, Johnson only put the inculpatory version of Campbell's statement into his arrest warrant affidavit and not the exculpatory one. If, in fact, Richard Winfrey, Sr. had told Campbell that it was a cousin, then the kids weren't involved at all. And the plaintiffs in this case are, you know, Richard Winfrey, Jr. and Megan Winfrey. So that was a very important inconsistency. The second inconsistency that pertains to Campbell is, you know, there were things that he said that were not just inconsistent between his two different statements, but that were inconsistent with what Johnson knew about the crime scene. For instance, Campbell claimed that Sr. told him that Murray Burr had been shot. He had not, in fact, been shot. Campbell said that Sr. said that Murray Burr had been mutilated in his genital area. That was also inconsistent with the crime scene. And Johnson knew of Campbell's inconsistencies because he interviewed, he was the one who interviewed David Campbell both times. So he knew what his first statement was. He knew what his second statement was. Johnson also knew that what Campbell was saying was inconsistent with the crime scene because he had received the autopsy report, which described, you know, the manner in which Murray Burr had died and what his injuries were. And it also described, and Johnson had also been to the crime scene. Okay, but the district court said that just the relationship between Megan and Burr, that her desire for hidden money and the presence of the sense, which he believed that he was not on notice at the time of the district court, that, you know, given what he knew, he just took it at that time. And Campbell's statement that Sr. murdered Burr with the help of Megan and Jr. would have told a magistrate that that would be probable cause. That those facts alone, he said, well, we don't know what facts he said would be enough. Well, he asked, one thing about this district court is that he writes in plain language and just states the things in very shorthand so you can see exactly what he's doing. So that's what he says is enough. Why isn't that enough? It's not enough because both defendants, both Rogers and Johnson, didn't think that was enough. Neither of them sought search or arrest warrants in this case until Campbell came forward. So the drop trail and the scent lineups were conducted. Let's recall, the murder occurred in the beginning of August 2004. The piket came in and did the drop trail and the scent lineups on August 24, 2004. Nothing happened after that. The teacher's statements about Megan, you know, saying to Burr in the hallway at school that she wanted him to take her out and spend some of that money on her, all that stuff was known to both Rogers and Johnson back in August of 2004. And yet they did not go and get any search warrants or arrest warrants. Well, the search warrants were obtained in 2006. So Campbell came forward in June and July of 2006, and Johnson himself acknowledged in the search warrant affidavits for the father and the son that he believed it was the drop trail and Campbell's inconsistencies that gave him enough probable cause to get the search warrant. And so from the perspective of what the defendant believed himself, he himself believed that there was not sufficient probable cause to get an arrest warrant for Richard Winfrey, Jr. until Campbell came forward. Well, it says Campbell's statement that Senior murdered Burr with the help of Megan and Junior. That is the last of the things. So that's why isn't that part of it? From the district court opinion? I'm reading from the district court opinion. Maybe I'm reading the wrong thing. I'm reading page 13 of 22 of the district court opinion, the last paragraph, Johnson protected by qualified immunity. Perhaps I'm in the wrong place because this is a complicated case, and you can instruct me and correct me. So what Johnson wrote two reports recounting what his interviews with Campbell revealed. And in those reports, in the first one from June of 2006, Campbell reported that Senior told him that the kids let him into the house. That's what Johnson's report from June 2006 said, and that's in the record excerpt. In the July 2006 interview, Campbell told Johnson that it was a cousin who let him into the house. And so the point is that by the time of the second interview, Campbell was not even saying that the kids had any role in the crime at all. He was saying that it was a cousin. And Johnson knew that because he had interviewed him the first time as well, and he chose to put only the inculpatory version into the arrest warrant affidavit. Would an officer have known at that time that he couldn't just put inculpatory materials in the arrest warrant? Was that clearly established? I know he can't put false things, but can he not just put the inculpatory at that time? Yes. And what case says that? I can't just try to think of the case. It's okay. I don't mean to put you on the spot. My next question is, if you think of it, let me know, but if not, I'll look it up. What about the timeliness point at the district court? What's going on with that? Richard Winfrey Jr.'s claim is a claim for unlawful detention without probable cause. He was arrested pursuant to legal process, that is a warrant, that is what instituted the prosecution, and then he was detained from that time until his acquittal in June of 2009. His claim did not accrue until the favorable termination of proceedings. Don't we have an intervening case that says that that's not true anymore? I thought that used to be the law, but the new law is that that's not accurate, that the claim accrues once they know about it, and it may have to be told because of Heck v. Humphrey, but it doesn't affect the accrual once the knowledge comes. Am I wrong on that? There is no intervening case that changed that rule. It's what you're thinking about, maybe Wallace v. Cato. So let me back up for a moment. This court, in its en banc decision in Castellano, adhered to the favorable termination rule, and in Castellano there's a footnote in which the court specifically refers to an earlier case called Brunet v. Campbell, decided I think back in the 80s, which said that for a Fourth Amendment claim of this type, it does not accrue until favorable termination. So then Heck v. Humphrey said that, you know, it explains the basic background rule for delayed accrual in Section 1903 cases, and the reason that you have delayed accrual is because of Section 1983 cases, according to Heck v. Humphrey, require delayed accrual where the plaintiff challenges either a conviction or confinement. And the reason for that is for reasons of federal-state comity. You can't have a federal suit that would call into question whether a state court properly found probable cause. So you borrow accrual rules from the closest analogy, closest common law tort analogy to the constitutional claim at issue. Now what the Supreme Court said in Wallace v. Cato is that for a false arrest claim, and recall that in Cato, or in Wallace, the court was considering a Fourth Amendment false arrest claim that was an arrest without a warrant. It was a warrantless arrest. And so the closest common law tort analogy in that case was false arrest. Because there was no state criminal proceeding at the time that could be challenged or called into question by a federal suit, the Supreme Court said that you could file a Section 1983 suit, and the accrual date is what normally applies. But in a case like this, where there's an arrest pursuant to a warrant, legal process has issued, and so the closest tort analogy is malicious prosecution, not false arrest. That's what the court held in Peck. That's what the court held in Wallace. And this court has adhered to those rules in subsequent years. Okay. This is where it gets confusing. If we're talking about malicious prosecution, but you have a Fourth Amendment claim, not a due process claim, what claim do you have, and why is it analogous to malicious prosecution? I'm not sure that you have a due process claim, frankly. Can you help me with this? What is the constitutional right that you believe was hurt by these facts? It is a Fourth Amendment claim for seizure, unlawful seizure without probable cause. And the reason that it is analogous to malicious prosecution is because it was an arrest with a warrant. It was an arrest pursuant to legal process. And so what the Supreme Court has said is that detention after issuance of legal process, such as a warrant, permits damages for confinement imposed pursuant to legal process. So it is a Fourth Amendment claim. And let's recall, the Fourth Amendment has many different types of claims. Under the Fourth Amendment, you could allege a false arrest claim with a warrant. You could allege an arrest claim pursuant to a warrant that's unlawful. You could allege an unlawful seizure claim. There's different types of Fourth Amendment claims that have different accrual rules. And in this case, the Supreme Court has clearly held that a Fourth Amendment claim that involves an arrest pursuant to legal process does not accrue until favorable termination. And not only has the Supreme Court said that, this Court has said that, and all of the circuits. Of course, your client was arrested on the basis of alleged false affidavit and false search warrant. And incarcerated at that point. Is that correct? Yes. And he remained incarcerated until the Texas Court of Criminal Appeals acquitted him. Is that correct? Correct. So, I mean, under Heck v. Humphrey, would he not have been confined pursuant to a state charge during this entire period of time? And under Heck v. Humphrey, the accrual date, his claim would not have matured until after acquittal. Is that correct? Right. And certainly no longer that the state conviction was challenged. Well, in this case, he was acquitted. That's what I'm saying, but he was acquitted, but he was convicted. He was convicted by the state trial court. Richie was never convicted. He was acquitted at trial. Junior? Junior. I'm sorry. Junior. Oh, I'm sorry, yeah. He was acquitted. He was acquitted pretty quickly, yeah. Okay, so when does his claim accrue according to you? Acquittal. Today, what's the date? Do you know? June 12, 2009. And when was it brought? May 26, 2010. Okay. But let's go back to the complaint, and I'm trying to find where you asserted or where Junior asserted in his complaint. I believe the original complaint, docket number one, was a live complaint, and I've searched for where the Fourth Amendment claim is, and I can't find it. So he doesn't label any of his claims a Fourth Amendment claim, but the gravamen of his complaint is that he was arrested without probable cause and that he was detained without probable cause. And at this point in the procedure— So he asserts a lot of things that are state law claims, and some of that might fall under there, but I'm trying to figure out where, given even the liberal construction of the complaint, it asserts a Fourth Amendment claim. Well— And I don't want you to use up your time searching, but if you later in a letter brief, you can point this— I don't have any time. It's all right. It's up to you, Judge. The complaint does not specifically reference the Fourth Amendment. That is true. It never uses the words Fourth Amendment. But the gravamen of his complaint has always been that the factual assertions, which is all that the Supreme Court has required in terms of notice pleading, has always asserted that his arrest was unlawful and that the warrants used to obtain his arrest were unlawful. And at this point in the proceedings, after we've had a prior appeal, and the prior appeal said that Mr. Winfrey had a Fourth Amendment claim and that what it was remanding for discovery was this issue about the warrants, we have long passed the stage where the defendants could assert that they were not on notice of this claim. Okay. If the Fourth Amendment was not the basis of the claim in the complaint, what was the constitutional basis of the claim? Well, I'm not saying that the Fourth Amendment wasn't—I'm saying that we didn't use the words Fourth Amendment. Okay. But assuming—if you didn't use the word Fourth Amendment and assuming that you didn't allege Fourth Amendment, what did you allege as the constitutional violation? Due process. Only due process. And on what basis was the due process claim—what facts was it alleged on? The allegations concerning due process was that their manipulation of Campbell's statements, with respect to Defendant Johnson, was the manipulation of Campbell's statements and allegations concerning Pikett. So what you're—what I'm hearing you say is that you alleged facts that support a Fourth Amendment claim, but you labeled it due process. There was a header under the legal claims section that said violation of due process, yes. But we did plead facts that alleged a Fourth Amendment claim of unlawful seizure without probable cause. Where does the prior opinion by our court, Judge Haynes' opinion, say that this is a Fourth Amendment? Where does it use that terminology? You said, well, it's already been labeled as such. I'm searching it, and I had looked for it earlier. It says that at star 978. Star 978, which is—I'm on star 979, so. I'm sorry, I'm still not finding Fourth Amendment. Okay, so you believe it says it there somewhere on that page. In a section that starts at star 978, it says, even if there is a violation of a clearly established constitutional right, a plaintiff must still prove the objective and reasonableness of the complaint of facts. Okay, it says return to Fourth Amendment principles. So they're turning to Fourth Amendment principles to help analyze the claim. Right. Okay, but I don't think that they're saying that they've alleged a Fourth Amendment or anything like that. They're saying because these are analogous, they're going to use these in analyzing. I don't think the court says you have a Fourth Amendment claim ever, and so I misunderstood what you were saying about what the prior opinion in our court did. It never says you've pled a viable Fourth Amendment claim or anything of the sort, right? I mean, I think it does because it goes on. After it says that it's turning to Fourth Amendment principles, it goes on to analyze in great detail the issue regarding the warrant. Okay, when is the first time you asserted in specific terms that this is a Fourth Amendment claim? At what point in these proceedings? I mean, it was argued in the earlier summary judgment motion. That was the case, that was the argument before the district court? Right. All right, and was that alleged procedural error on the part of the complaint, not alleging a Fourth Amendment claim, ever objected to specifically by counsel for defense? No, it wasn't. So then it's waived. Right. And let me add that the statute of limitations question has also been waived by the defendants, as we've pointed out in our briefs, because the first time they ever raised that issue was— Say that again. Say that again. What were you just saying? The statute of limitations issue? Uh-huh. The first time that the defendants ever raised that was in the second summary judgment, which is what is on review here. Right, but that can't be waived if the district court chooses to take it up. The district court didn't take that. You know, the district court made a ruling on it, so the district court decided to rule on that. I mean, so it's not just an argument that they made or failed to make, and I think we're talking about forfeiture, not waiver here. It's not intentional relinquishment of a known right. But if the district court chooses to rule on that, the only issue is whether the district court could rule on it, not whether they should have been held to waiver, because the district court has already passed that threshold. Do you see what I'm saying? Am I wrong on that? I mean, if the district court, you know, if the district court, and the district court did find that there was no problem with the statute of limitations, so it did rule on it. So— Let's assume, let's sort of circle back, because I think we've taken you in a number of directions. Let's circle back. So let's assume, for argument's sake, that the district judge was correct, that limitations was not busted here. He nevertheless grants qualified immunity. Why does he grant qualified immunity, and why do you think he was wrong? He granted qualified immunity because he thought the warrants established probable cause, even though he acknowledged that Johnson was reckless. And that is wrong because the warrant would not have established probable cause without the falsehoods and the material omissions. And, I mean, the only thing that was in there— What he did, he viewed it under Franks, and he says, even though there may be misrepresentations, we exclude those, and still there's probable cause. Right. And for that reason, granted qualified immunity. Right. Okay. Go ahead. Were there any other factors that he looked at in granting qualified immunity that you think he was wrong on? Well, he also referenced an issue concerning whether Johnson was reckless in not including certain inconsistencies of David Campbell. And, in particular, the district court said, well, there were these two interviews that Johnson had with David Campbell, and the first one was just not complete and based on notes, and the second one was the complete full interview, but that's not supported by the record. Johnson documented both interviews with Campbell in typed police reports, and he, in fact, said in his deposition, there were no notes ever produced, by the way. So this issue of there being notes, there was nothing in the record concerning notes. But Johnson did testify at his deposition that if he had taken notes of his interviews with Campbell, he would have recorded them verbatim into his typed police reports. And so the district court sort of waved away the inconsistencies in Campbell's statements by relying on something that wasn't in the record. And for the sake of a full opening, were you going to argue anything about the district judge, if we decided to remand this issue, whether or not the district judge should be replaced? I do think the district judge should be replaced in this case. Based on the case that I cited in my opening brief, the defendants actually didn't respond to that in their response brief. This case has been pending since 2010. This is the second trip that this case has made to this court, and in our view, the district court did not follow the mandate on remand. And I think that in order for us to get this case going, to move it along, I think we need to I mean, I've made mistakes as a district judge. I mean, I'd hate for that to be the standard. I mean, is there anything about the underlying conduct that we're not getting from the sense of reading the briefs? Well, there is stuff in the record in terms of his hearings that he conducted in the case. And if you read some of the transcripts of the prior hearings that he conducted in the case, he was clearly not He was hostile. He was pretty hostile to the plaintiffs. And my first appearance before this district court in this case was extremely memorable because of the way that he treated my clients. But it's something that we raise, and I don't press it particularly strongly. I think that the merits of the appeal are what we press most strongly. Okay. Well, I have some questions just to clarify. So, as we said earlier, and I think you acknowledged, the only thing from your point of view, the only thing that is before us is Well, let me say, I just understand what the district court did whenever it granted qualified immunity. It found no violation of not just no established law, but it found no violation of the Fourth Amendment on the grounds that the search warrant supported the arrest that was made pursuant to the warrant, correct? Right. So there was no violation of any Fourth Amendment right in the judge's view on the part of Mr. Johnson. Notwithstanding any kind of other kind of misconduct he may have engaged in. Correct? So it really decided it on the merits. Right. Dismissed your case. So the only issue before us then is whether, well, aside from what the district court did, whether your Fourth Amendment claim against one defendant, Mr. Johnson, based upon the Fourth Amendment, based upon the facts of the exclusions and omissions of the search warrant, survived. Correct. All right. And then there's, well, I guess that's not a question. Then other kind of questions relate to damages and injuries resulting from that executed warrant provide any kind of damages and what damages. But that has never been reached in this case. Never been an issue, correct? Correct. So we are only to decide the legal issue of the district court, whether the search warrant, whether the arrest warrant, survives notwithstanding exclusions and omissions. Correct. And if it does, whether the alleged, whether the exclusions and omissions were reckless, or really whether there's a disputed issue of fact as to whether they were reckless. Right. And that's it. Right. Well. Okay, tell me what else now. Yeah. Because you've got, you know, we've got due process peppered around here. Right. And we have a Fourth Amendment. Go ahead. Let me address the due process issue. So the plaintiff does have a due process claim for fabrication of evidence. In this court, in Boyd v. Driver and in Castellano v. Fregoso, well, in Boyd v. Driver, the court applied Castellano and said that even when somebody has been acquitted, you can have a Fourteenth Amendment due process claim based on the fabrication of evidence. And in this case, we've got sufficient facts for that. Now, the district court didn't address that claim one way or another, but it is, in our opinion, still a live claim in this case. Okay. I mean, I suppose what your due process claim is, I don't know, and I'm not quite sure whether you've articulated it, but just in a common language, is whether the law enforcement officers framed your client with testimony that was false. Is that what your claim is? What is your due process claim? The due process claim is that Johnson included falsehoods, used falsehoods to have the prosecution continue beyond the initial seizure. So that's when the due process clause applies, is when the Fourth Amendment applies to the pretrial detention part. And then in Castellano, the court said that if a prosecution continues beyond the initial seizure, and it didn't exactly pinpoint what time period from seizure to trial, but if the prosecution continues beyond the initial seizure, you can have a Fourteenth Amendment claim. Well, I've wondered about that. I mean, it seems to me that if you, I may be wrong about this, but if you establish a Fourth Amendment claim here, whether his injuries, whether there's a causal connection between his injuries, that is, his two-year incarceration, resulted from the initial seizure and continued, I guess it probably, whether those were damages that resulted from it, as opposed to no constitutional, no Fourth Amendment claim, but I guess it would have to be damages arising from violation of the Fourth Amendment to satisfy the injury. And so he would just have the period of time of injury from the time that he was actually arrested until the time that he was litigated, or until the time that he was actually indicted? Well, it would go beyond that period, because in Manuel v. City of Juliet, the Supreme Court said in its decision in March of this year that the Fourth Amendment covers damages for the entire period of pretrial detention. So Winfrey was detained from the time of his arrest with the warrants until the time that he sat through trial and was acquitted. So it covers that entire period. Even the period of time that he had been indicted by a grand jury? Correct. Because nobody's urged an intervening cause. Correct. They did urge an intervening cause in their most recent briefs. I know, but that ain't racist. In other words, that's way he doesn't understand it, but I don't know that. I think that's an issue in the case, or am I being wrong? I mean, they did raise it in this brief, but they didn't raise it in the prior appeal. As we said in our brief, it's been waived, and it's also law of the case, because they could have raised it in the earlier summary judgment and the earlier appeal, and there's no reason that we should allow, as the Court has said in prior opinions, that we should not allow parties to come raise issues that they should have raised to an earlier panel. Can I ask a few? Do you have any more? Well, I may, but you go ahead. I just want to make sure that I have a kind of a road map of how I would have the issues we would have to decide. I want to just make sure I have it. The first issue that we would have to decide is, is there a Fourth Amendment claim before us? Was it fled and was it addressed before? Is there a Fourth Amendment claim before us? The second issue we would have to address is, is it time barred if it is before us? The third issue we would have to address is whether there was probable cause independent of the misrepresentations and omissions, and a side issue that may or may not be forfeited. What did you say the third was? I was trapped. Probable cause for the arrest and detention independent of the omissions and falsehoods, assuming there are. And a side issue that may or may not be forfeited or waived is whether there's an intervening cause. That's a side issue of how you would, I'm putting that to one side, but a bit kind of off of probable cause. Then the next question you'd have to decide, and these are if you get to know, if you get to know at any one of these you don't win, but if you get, you have to go through these hoops. If you, if it's reckless, you then have to establish that the affidavits are reckless and not just negligent, right? And then you have to establish that clearly established law would tell a reasonable officer that these were reckless and not just negligent. And if you get to all of that, then you get to go to the jury. And I think that's the progression of the analysis. And you may or may not have some side claim also of in freestanding due process fabrication of evidence, which I'm going to put to one side also. Does that accurately reflect what you believe the analysis is in this case? Yeah. Okay. Thank you. Okay. Thank you very much. And you can take some time for rebuttal. And now we'll hear from you, Mr. Helstrom. Thank you. Good morning. May it please the court. I had my outline, but I think I'm going to use Judge Elrod's. Actually, I think it does. I concur that it fairly characterizes the issues before the court. And I would say at the outset, in response to the question Judge Elrod posed to appellant's counsel, it cannot reasonably be said that the prior opinion in this case somehow constrains the district court's consideration of the legal and factual questions presented in the lawsuit. Because the prior opinion specifically concerned itself with the district court's narrow focus initially on questions that the district judge believed allowed him to make dispositive rulings, many of which were upheld by this court on appeal in the prior opinion. But as I think Judge Elrod implied in her question, this court should not find itself any more constrained than did the district court in not only its ability, but I would respectfully submit its obligation. Well, the intervening cause does seem late to the case. Well, perhaps. When did you raise that? Did you raise it before the district court on remand? On summary judgment on remand. Yes, Your Honor. And that's the point, is that while that certainly can be argued, the problem with that argument is that, again, the district judge set out a roadmap that he considered appropriate as to what he thought was necessary to determine the questions of fact and law on both liability questions and immunity questions in the early stages of the case. So the district judge neither permitted discovery in that issue nor invited summary judgment on that issue. And while one could reasonably argue it could have been asserted, it was not the focus that the district court commanded. And this court observed that. I mean, the remand order says that the district court abused its discretion in denying a handful of Winfrey's Rule 56D discovery requests as described above. Accordingly, we vacate and remand summary judgment as to those matters. Now, it would have to fall into those matters in which she was denied discovery. And it seems to me that if you go beyond that, you go beyond the remand. I certainly wouldn't disagree, Your Honor, except that that's a part of what was remanded. Well, I mean, that may be it. It would be our job to determine how broad the remand was. But you have to stay within that remand, whatever it is. Yes, sir. And to be sure, the question that was remanded to the court was, did probable cause exist? And the Franks analysis requires not just a consideration. I don't know that that's exactly the precise, was whether it was reckless. I mean, that's... And the recklessness would vitiate the probable cause. Exactly. So if he found that it was reckless, he would find that the affidavit supporting the arrest warrant was a violation of, I mean, to speak to the sure fact of Winfrey's Fourth Amendment rights. Not necessarily, but certainly in the chain of consideration. But even if the allegations were reckless, if the affidavit could be revised to remove those things and still support probable cause, Franks would say there's no constitutional violation. But I wanted to answer your question, Judge Elrod. But I also want to point out that that is really, respectfully, a red herring in this appeal because of the issues that Your Honor outlined as more paramount. And so let me speak to those if I may. You don't need intervening cause because you think there's probable cause in the warrant already. Well, there is. But if I could return to Your Honor's sequence, let me speak to that if I may. And Judge Rodriguez asked this question, and I want to be sure that the Court gets the answer. There is nothing in the complaint that alleges an arrest without probable cause that I can find, Your Honor. And I think you'll find that the allegations that we're talking about here are in paragraphs 45 through 48 of the plaintiff's complaint where the plaintiff— I mean, and she is saying that the—she is saying, or at least—I mean, I'm assuming some facts that you may know better than I. Well, because they're very— And withholding of material evidence in the search for the affidavits. Now, that would certainly—and if those allegations were true, that would certainly vitiate probable cause. So she did, I mean, implicitly, allege probable cause. It did not—probable cause was not—did not support the arrest warrant. Again, Your Honor, I'm not sure it's that simple with all due respect. But the more significant point I'm trying to make here, if I'm not being clear, I apologize, is the first question Judge Elrod posed, and I think the first question the Court has to answer, is did Mr. Winfrey, Jr., in this case, allege a claim that he was arrested without probable cause? The answer to that question is no, he did not, because in his complaint, what he says is that the investigation set in motion a malicious prosecution. Was he arrested pursuant to the arrest warrant? He was arrested pursuant to the arrest warrant, yes, and that is— I don't quite understand your argument, the point you just made. You're saying that he doesn't allege that he was not falsely arrested, but yet he alleges that the arrest warrant itself was false. How does that reasoning work? Well, he actually doesn't explicitly allege that the arrest warrant itself is false. But in delineating his claim, he identified a claim of a malicious prosecution, and if I may, Your Honor, this was put to a much finer point, and indeed a stipulation that I think resolves Judge Elrod's first question in the negative, that is, no, no such claim was ever pled, but even if it were pled, at pages 2712 through 2716 of the record, the court will find that Mr. Winfrey stipulated that he was not suing for an arrest without probable cause. Specifically, Ms. Wang said, and I am quoting now, he is not pressing, neither of them, because we were talking about both Ms. Winfrey and, both Megan Winfrey and Winfrey Jr. at the time, Ms. Wang said, quote, he is not pressing, neither of them are pressing a false arrest claim. They're pressing a malicious prosecution claim. And she's making these statements where, to the district court? To the district court in a hearing prior to the submission of the summary judgment. The, I said in response, quote, I will accept that stipulation. That's certainly not how I have been defending the case with all this evidence, because I understood, as Judge Jolly has suggested, that the claims against Mr. Johnson could only be for the arrest because the undisputed evidence is he played no role in the decision to take the case to the grand jury or to prosecute or in the prosecution itself. I would just point out, too, I mean, this is a friendly comment to you and one that Ms. Wang should be able to answer, and that is that there is no federal constitutional claim on malicious prosecution. Well, actually, I beg your pardon. In and of itself, malicious prosecution is not state of violation of the federal constitution. You've got to be more specific about it. I mean, there are certain elements of malicious prosecution that can be carved out of the constitution, but just generally the state cause of action on malicious prosecution is not a cognizable federal or constitutional claim. I agree with that assertion, Your Honor, except that continuing in that same hearing, that's the exact opposite of what Ms. Wang told the district court Mr. Winfrey's claim was. And now I'm at page 2716 of the record, and again, the judge poses the question to Ms. Wang, quote, we're only going to do malicious prosecution? Ms. Wang responds, that is the 14th Amendment due process claim, malicious prosecution. The court says the 14th Amendment claim is a 14th Amendment claim. The facts that make up the 14th Amendment claim may be a prosecution without due process of law. Ms. Wang says yes. So the answer to Judge Elrod's first question and Judge Rodriguez's question is, it is neither in the complaint, nor— The plaintiff was wrongfully arrested, but I'm still having trouble, even if we say it's been subsequently incorporated throughout the document, tying it into a Fourth Amendment claim. And that's the point, Your Honor. And if there were any question from the complaint, of course, the initial pleading, there was a fine point put on it when counsel stipulated that the claim was not one for false arrest, which is, as Judge Jolley's pointed out, an independent, actionable claim under the Fourth Amendment. Now, that brings me to Judge Elrod's second question. If there is, and I think that this Court would be far too liberal in its reading of the record if the Court finds that there was a Fourth Amendment claim of an arrest without probable cause on this record— Let me interrupt you here. If we find that there was no Fourth Amendment claim pled, is that the end of the story? Yes. Okay. So in the alternative, then, I'll let you go through the list. Right. The district judge did not address that, but, of course, as this Court has held and the Supreme Court has held, in reviewing a summary judgment, the Court must consider any grounds that were submitted, that were pled or argued, that would support the summary judgment. And this, of course, was asserted in light of the stipulation that occurred before the district court. So then, if I may, moving to the Court's second question, which is, is the claim then time barred, the answer is absolutely. Even if this Court finds that there was a Fourth Amendment claim for an arrest without probable cause asserted against Johnson, it is time barred. And the answer to that question does not depend upon, as opposing counsel suggested, any consideration of Heck v. Humphrey, because, as the Court knows, Heck concerned itself with the timing of the prosecution of a civil rights claim in the face of a criminal conviction. We don't have that here. And, moreover, after Heck was decided, the Supreme Court answered the question of the accrual of a cause of action for arrest without probable cause directly in Wallace v. Cato. Well, let me stop you here. Assuming this—so he gets arrested in, what, in 07? Yeah. So he gets arrested in 07. If he had filed this lawsuit in 08, what would have happened in the district court? Wouldn't the district court either have dismissed or stayed? Well, let me expand your question, if I may, to answer it, Your Honor. If he had sued Johnson for what Johnson did, because the record is undisputed that Johnson did investigative work and then, with the assistance and at the direction of the district attorney, prepared and submitted an affidavit for the arrest warrant, but at that point Johnson's conduct ended, Johnson's role in the prosecution ended, if he'd sued Johnson, he would have had a complete cause of action, according to Wallace v. Cato. Because he would have been arrested, he claims, without probable cause. So he knows that he has a cause of action at that point. Wouldn't most courts have said, well, I don't want to get in the middle of this, I'm going to wait and see until after the trial? Yes, Your Honor. So that's the second part of my answer to Judge Rodriguez's question, which is, if he had brought a lawsuit that also sued, as he ultimately did, the Rangers, Pikett, the sheriff who did participate in the grand jury proceedings and testified at trial, the district court, as Wallace has explained, would have had the authority to stay the lawsuit, to allow those things to conclude, because of course there may have been a preclusive effect, as Judge Elrod's point, through a criminal conviction. However, that doesn't matter for consideration of the answer to Judge Elrod's second question, which is, is the claim time bar? Because, Your Honor, the answer that came from Wallace is, the lawsuit still has to be filed. It is accrued, and limitations is running, and it has to be filed. Now, the Supreme Court has counseled that the district judge may then stay the case. But it specifically made clear, in Wallace v. Cato, that the district judge may not extend limitations because he or she would have stayed the case. Judge, how late, from your point of view, how much late was this lawsuit filed? If I can take a look at my brief, I can tell you, Your Honor. It's a matter of, simply, I apologize because I didn't write down the date of the arrest. I just, generally, what is your... I'm sorry, Your Honor? I'm not asking so much for precision, but just generally, when should it have been filed and when was it filed? Well, again, under Wallace v. Cato, it seems quite clear that he would have had to have sued within two years of the actual arrest. And I think I have that here, Judge. Winfrey was arrested on February 8, 2007. And in Helton v. Clements, this court said a cause of action accrues, I'm quoting, the moment the plaintiff becomes aware he's suffered an injury. Now, I don't think one could reasonably argue... And so when did he file the lawsuit? Well, he filed the lawsuit on May 26, 2010. That is a little bit more than three years after his arrest. When did he become aware of the issues with the affidavit? Well, he would have been aware of the affidavit at the time that he was arrested because the warrant included the affidavit information. But even if that weren't the case... I mean, how would he have known at that point of the snitch, jailhouse snitch? I mean, he couldn't have possibly known that at that point. Yes, and in fact, in answer to your question, Judge, he would have known no later than when his attorney, his criminal defense attorney, filed an arduous motion to suppress the evidence that was represented in the arrest warrant. And that's at record 3171 through 3188. And this is on page 53 and 54 of the brief. And so that was October 15, 2007. Again, more than two years prior to the suit being filed. Were you the lawyer at the time that this 2012 opinion came? Were you the lawyer throughout? I mean, you're a very experienced lawyer in these matters for law enforcement, qualified immunity. And it is somewhat problematic that these were not raised, the Fourth Amendment claim, that it's not fled or that it's stipulated. Why are we going through all these really parsing recklessness versus negligence if there are these straight-up defenses? This is really problematic. Well, first of all, let me say I appreciate your kind words, Judge. It means a lot coming from you. The answer to your first question is no, I was not involved until after the remand. But that notwithstanding, this court, as Judge Jolly pointed out, criticized the trial court's relatively narrow focus on resolution of this case. And while I often appreciate it from this district judge, I appreciate that approach in many instances, and I think that this particular district judge embraces the mandate of the Cost and Delay and Reduction Act and Rule 16's management responsibilities for a district judge. But as this court has observed in this case and some others, it sometimes leads to a too narrow focus. And so the answer to your question is, while I can't tell you why my predecessor did not raise some of these issues, I think it's clear from this court's prior opinion that those issues were not really welcome or invited at the moment that the district court decided the original summary judgment. Is that an argument that we should assign it to another judge? Are you joining Ms. Lange in suggesting, as a result of the comments you made about the judge there, that it should be reassigned to another judge? Oh, goodness, no. I think that— I wouldn't say intimidated, Your Honor. The district judge had an approach to the resolution of this case. And it should not be lost on this court. Well, all of a sudden, it sounds like you had his mind made up. Is that what you said? Oh, I beg to differ, Judge. I think— I'm just using your words. I mean, what— Then let me apologize for my ineloquence, Your Honor, because that is not what I mean to say. What I think this court observed, and what I think is accurate, is the district judge focused on the issues initially that he thought were important to be resolved. And he set a roadmap for the parties to follow that course to allow him to make the resolution of those specific issues. I don't think my predecessor was intimidated by the district court. I think my predecessor thought that answering the district judge's specific questions was appropriate at the time. Now, to the broader question of whether the district judge should not continue to preside over this case, let me say first, I can't see how this case gets back to the district judge, with all due respect. But if it does, there is simply no basis for switching judges because the plaintiff doesn't like the way the case is going, which is exactly what's being asserted here. Keep in mind, if I may, that we are now down to one claim against one defendant, and everything else the district judge did in this case found favor before this court and was affirmed by this court. In an unpublished opinion, which is not precedential, by the way. But my point, Judge, is in answer to your question of the suitability of this particular district judge to this particular case, he's batting about 900 right now on this case. So the suggestion that he's doing anything that any district judge would not have done, I think is most unfair. But again, I don't think you get back there. Because if I could return to the outline, and I know you'll stop me when you think it's appropriate, but I don't. Thank you. So then if I could get back, thank you, Your Honor. If I could get back to Judge Elrod's outline, the third question was, did probable cause exist? Once the court does a Frank's analysis. And the important point there is that's a question of law, not a question of fact. The appellant raised this as the idea that the jury could decide whether the revised affidavit would be one that would support probable cause. But in Davis v. Strain, which you cited in the briefing, Hart v. O'Brien, and I believe Piazza v. maybe all cases from this court and the Supreme Court's opinion in Frank's, it's quite clear that the question of whether the revised affidavit under Frank's analysis would support probable cause is a question of law. But not only does the court have the ability to make that independent legal judgment, and of course this court reviews that de novo on appeal, but we also have a significant amount of evidence in the record that demonstrates the accuracy of that assertion. And it is in both the October pretrial challenges to this evidence before the criminal district court, in which the questions of Campbell's testimony, his statements were raised, efforts to preclude him from testifying at the criminal trial were asserted, as were the allegations involving Pikett's scent drop. And by the way, let me say, the record is undisputed that Johnson did not know of problems with the scent drop until after the criminal trial acquittal had occurred. There is no evidence otherwise. And in fact, Huff's affidavit… Why don't you try to bring it to a close in about ten minutes? I beg your pardon? Why don't you try to bring the argument to a close in about ten minutes? Thank you for the time, Judge. I'll wrap it up. Well, Johnson did know. I mean, in fact, he's the one that is accused of doing this, of cherry-picking things for the affidavit. You know, that you don't put in things that are problematic about this informant, and that you make it seem like it's a home run, and it's not really at all, and it's got all sorts of problems. And is that misleading such that an officer should be liable for that? Well, no, for two reasons, Judge. The one that I was just saying, which is… Well, let me back up and say, Chief Johnson's affidavit was, again, the undisputed record shows, largely crafted by the district attorney. And his reliance on the district attorney is certainly reasonable. But regardless, as I said, these questions, these very questions, Your Honor, were raised before the presiding state district judge on motions to suppress this evidence before the criminal trial on October 17th. I don't think it's analogous that the fact that they're going to still let him testify, to me, doesn't tell whether or not a reasonable officer should be omitting major things that make what he's putting in there seem unreliable. I don't think it's analogous that they ultimately let this person testify or didn't exclude them. I don't think that's… Well, that's not the point I'm trying to make, and I apologize, Judge. The point I'm making is the district judge, after considering these very questions, continued to find probable cause to exist for the prosecution. So the question here, your question number three is, under a Frank's analysis, does probable cause exist? One, the district court correctly found, and I believe this court will find on review, that yes, under a Frank's analysis, as a matter of law, this court would find that affidavit would support an arrest. But beyond that, the state district judge, having considered, including testimony, much more developed record than the affidavit, the exclusion of Pikett and the exclusion of Campbell still found probable cause to exist for the arrest. And, to put a fine point on it, at the conclusion of the prosecution's case in chief, the district judge still denied a motion for directed verdict, finding that there was sufficient evidence to support a conviction, which we know is significantly more robust. Okay, why don't you move on to intervening cause, if you're going to address it, recklessness, and whether the officer's conduct was reasonable, which are the questions of the judge. Thank you, Your Honor. The intervening cause question, again, then, obviously, is before the court, I would respectfully submit. And the grand jury indictment is an intervening cause. When was the intervening cause raised, you say, on remand? I beg your pardon? Intervening cause was first raised on remand. Right, because the whole question of the – Okay, that's all I want to know. Okay. But may I say, Judge, it's because the whole question of the probable cause analysis and immunity were raised in a broader sense on remand. It's all part of the same question. But – Let me stop you here. So he gets arrested February 8, 2007. The grand jury issued its indictment thereafter? That's a question. Yes, there was a grand jury indictment. Even if we get this far and you get to argue intervening cause, you still have a problem with a few days or weeks, don't you? I'm sorry? You still have a problem with a few days or weeks because the arrest took place February 8, 2007, so you would still have damages, arguably, until the grand jury issued its indictment. Except that the grand jury's indictment insulates the claim because they independently found probable cause. So we know then that probable cause existed at the time of the arrest, and the significant fact there in answer to Judge Elrod's question is Johnson had nothing to do with the grand jury's indictment. He did not appear before the grand jury, and there is no information that any evidence that he collected or reported was used before the grand jury. Rogers testified before the grand jury, but not Johnson. Lastly – Is this – Thank you, Your Honor. I'm sorry. No, that's – of course. I want to answer your question. In this case, the highest is recklessness. This is not a they were out to get this guy and frame him or something. I mean, this is not – this is not higher than recklessness, right? There's no allegation of anything above recklessness. No malice. No malice. No that this is – they were out to get this person, and he knew him, and he hates him, and that sort of thing. Absolutely. No evidence of that whatsoever. The evidence is, as Counsel for Appellant pointed out, the teachers at the school told Johnson that Megan had a relationship with a decedent and that they were seen quarreling, and then independent information came from different sources, including Campbell, that seemed to keep pointing back to the Winfrey's. So the answer to Your Honor's question is, right or wrong, and we really don't know, but right or wrong, Johnson and Rogers, I think, and Huff and Ranger Duff and the prosecutor honestly believed that Winfrey's committed the crime. Okay. Move it on. Move it on, Mary. Thank you, Judge. Lastly, as to the question of immunity, then, the Court reaches the question of immunity only if the other questions are resolved in the appellant's favor, and in that regard, I would just offer two suggestions beyond what I think is in the brief, which I would respectfully submit is quite adequate to make immunity clear. One is clearly established law. There's simply no clearly established law that would have told Johnson that his affidavit was unquestionably unconstitutional. And, of course, remember, it was — Well, I mean, there may not be — there are disputed issues, in fact, that touch on that. I mean — I would respectfully disagree. Okay. You better be brief about your answer to me. Don't make it long because your time is running out. Okay. Go ahead. I understand, Your Honor. So let me leave it at that if we disagree on that, except to say that the law is quite clear, beginning with Frank's, and certainly through the development of the cases cited in the brief,  I understand. Secondly would be the question of whether the plaintiff has demonstrated, as is the plaintiff's burden, that no reasonable officer could have believed that affidavit to have been constitutionally permissible or constitutionally firm. And the answer to that question is not only has the appellant failed to present any evidence to disprove that, as is his burden, the undisputed evidence in the record is, again, that Ranger — Okay. I'm — I'm sorry, Your Honor? You're getting a little long-winded now, even for me. If you'd like me to sit down, Judge, I'll sit down. Well, no, I want you to complete your argument. You've got something you precisely want us to consider, but we don't need to retry the case altogether. Yes. The only point I wanted to make, Your Honor, was that Ranger Huff and Sheriff Rogers, as well as the district attorney, all believed that that affidavit was appropriate. So the only evidence that the Court has on the question of whether a reasonable officer could have believed the affidavit was appropriate is that it was. I appreciate the Court's time, particularly the additional time. Thank you. Well, thank you, sir. You knew the case — you know the case well, I will say that. Ms. Wang? Ms. Wang, I want you to turn your attention to the Fourth Amendment, whether it exists or not. I mean, what are these stipulations before the district court? Yes. What I said was, in the hearing before the district court, and this is on ROA 2712-13, I said, Right, he's not pressing — neither of them are pressing a false arrest claim. They're pressing a malicious prosecution claim. Mr. Huff and then said the Fifth Circuit doesn't recognize the Section 1903 clause for malicious prosecution. The district court agreed. I then said, No, no, these are federal-based, Your Honor. And as we said, when an arrest is obtained using a warrant, the Fifth Circuit has said that when an arrest is obtained using a warrant, it is malicious prosecution, and it is because he was then interrupted. Later down on the page, I say it's a Fourth Amendment prosecution claim. And then I go on to talk about the Fifth Circuit's en banc decision in Castellano. Oh, you're saying I misspoke, but you corrected it. Yes, yes. The term Section 1903 malicious prosecution is just a label. And I probably shouldn't have used that label to describe it. It's a state cause of action. Malicious prosecution is a state cause of action. But what the Court, the Supreme Court in Wallace, in Heck, and what this Court said in Castellano is that there is a Section 1903 claim for fourth — under the Fourth Amendment for arrest using legal process such as a warrant without probable cause. And in Castellano, this Court said that the plaintiff had both a Fourth Amendment claim and a Fourteenth Amendment claim. Now, in that case, that guy was convicted after a trial, and then his conviction was overturned. But this Court said, in remanding and saying that he could retry his Fourth Amendment and Fourteenth Amendment claims, it said that the Fourth Amendment covers pretrial detention without probable cause. The Fourteenth Amendment covers what happened after he was convicted and was incarcerated pursuant to a conviction. And notably, in Castellano, this Court said his Fourth Amendment claim and his Fourteenth Amendment claim, they are timely. The Fourth Amendment claim is timely because it did not accrue until favorable termination. I mean, that's — So we're conflating different issues here at this point. So let's stop on just the Fourth Amendment claim. So the problem, I see it. You're restating the law accurately, from what I can recall. But the problem is you didn't — it's not pled in the complaint. And so is your argument, then, it was tried by consent by all the parties? Is that your argument to get around the pleading failure? My argument is that his complaint does say that he was arrested without — that he was arrested wrongfully.  No, I agree. And I'll give you that, too. But you're not tying it into a claim under the Fourth Amendment. So, I mean, how was the defendant to have noticed that you were raising a Fourth Amendment claim there? It was argued in the prior appeal, in the briefing on the prior appeal. It was decided by the prior panel in this case. The prior panel in this case then remanded for discovery on this specific issue. And then we conducted discovery on this issue. And the first time this argument was ever raised was in the summary judgment briefing on remand. And the district court — I mean, they raised it in front of the district court. You just said — read the transcript in which you said, No, Your Honor, this is a Fourth Amendment claim for unlawful arrest, is what you said, in response to the misspeaking on malicious prosecution. Was that in the first trial? Was that in remand? When was that? When did that occur? That was on remand. That was in 2014. And opposing counsel said that he thought that that's what the case was about. Right. Didn't so — Right. So, where does that get us? So, everybody understood what this claim was. Everybody understood what this claim was in the prior appeal. Everybody certainly understood what the claim was after the opinion by the prior panel. And we did discovery on this. So, it was tried by consent? Yes. Okay. So, then we get to now the limitations argument. Can you address what we heard from opposing counsel there about limitations? So, the limitations issue, it's been decided by the court. Mr. Winfrey's claim did not accrue until favorable termination. When you say been decided by this court, you mean in this case? No, you mean in a — okay. In Castellano. In Castellano. And there's a footnote. It's footnote 111 in Castellano. It's specifically talking about Mr. Castellano's Fourth Amendment claim for pretrial deprivation without probable cause. And it says that we have no occasion here to reconsider what we have previously held about when these claims accrue. And what the court had previously held, going back to the 80s, about when the claim accrues, is that it accrues at favorable termination. Was this post-Wallace? I forgot. Post-Wallace, 2003. Could Junior have brought a claim against Johnson in the federal court while he was still being prosecuted? No. Under Heck v. Humphrey, Junior could not have brought that claim because under both Heck and an earlier case called Pizer v. Rodriguez, the Supreme Court explicitly made clear that claims that challenge either conviction or confinement cannot be brought until favorable termination. And so then the challenge to the affidavit would have been implicating Heck v. Humphrey here. Correct. Correct. Unless the court has any more questions about the statute of limitations question, I have one more point to make. And that is about the intervening cause. And with respect to the intervening cause, the grand jury indictment occurred on March 22, 2007. That's the answer to the question you had, Judge Rodriguez. So it is true that we still have a problem between the time of the arrest and the grand jury. But let me tell you about the evidence that we have that shows that there was taint. The evidence of taint is that Defendant Johnson is still claiming today to not have known about Pikett's report. And we know that that is not true because he himself admitted that he had all the reports and that he looked at them in drafting the affidavits and that he put specific, very detailed information. If you look at his warrant affidavits, they have very detailed information about Pikett's dogs, how many scent trails they did. There's no way he did that off the top of his head. He had those reports and he looked at them. And he specifically decided to include the inculpatory information or to include false inculpatory information about the drop trail and to not have the exculpatory information. How does his report tell you whether he knew that it was problematic? I thought his claim is that he did not know that there was a problem with it. The report, Pikett's report itself said that it was ham and scent that was used. And so that's the whole issue. I mean, that he's that deep into it and he'd realize, oh, my goodness, this is a problem. That doesn't tell you that he knew that they were problematic reports. But he knew it was false. If he had Pikett's report in front of him, which we know that he did, and the Pikett's report said that the drop trail used Christopher Hammond's scent, not Richard Winfrey, Jr.'s scent. So what explains why he put in Richard Winfrey, Jr. in the drop trail? I asked him that at his deposition. And what he said was, I don't know. That was his answer to everything. When I asked him about the inconsistencies in Campbell's statements, why he put in stuff that Campbell had said or didn't say, he kept saying, I don't know. I mean, he had no explanation. So the reasonable inference from this record is that he knew. But going back to the intervening cause, my point about it is that to this day, Johnson is claiming that he is denying that he knew about Pikett's report. And so given that, it's inconceivable that he told the grand jury otherwise, because we know that he didn't tell the magistrate about the inconsistencies. We know that he didn't tell the magistrate about the false ‑‑ Well, he didn't testify at the grand jury. I thought that's what the Postal Council said. He said in an affidavit that he testified in the criminal proceedings. He didn't testify in Richard Winfrey Jr.'s trial. And so the inference from that is that he did testify in front of the grand jury. And regardless of whether Johnson himself, I mean, even putting that issue to the side, regardless of whether Johnson himself testified before the grand jury, the question about the grand jury is whether or not they had all of the evidence and all of the facts before them. And what we know on that record is that they could not possibly have found probable cause without Campbell's statements and without the false drop trail. And even if it were true, and there's nothing in the record, by the way, that shows that Rogers testified before the grand jury, but even if that were true, we know that Rogers falsified things in his affidavits, in the search warrants and the arrest warrants. I mean, that was discussed in the prior panel. And so the point is that the grand jury could not have had probable cause to issue an indictment if it had had all of the inconsistencies that Campbell said and if it had the drop trail information. Because the significant thing about the drop trail information is that it called into question the scent lineup. The drop trail was done using Hammond's scent. But does a grand jury have to do inconsistencies? I mean, can't you just put your best foot forward? I'm not saying before the grand jury, but do you have to show all of that? Is there a duty of full disclosure to the grand jury that's clearly established? No. I thought the whole idea of the, I mean, part of it was that you present the prosecution's best version of the case. You can indict a Hammond. Indeed. That's true, but in this context, I think the question when the court had looked at the grand jury is whether or not it had all the facts before it that would have established probable cause. And if it didn't, and we say that the record here shows that it didn't, then it means it didn't break the chain of causation. Okay. Does that conclude the argument? That concludes the argument in that particular case, but I would like to compliment both lawyers in the sense that you have been helpful in assisting the court in trying to understand the case. You both knew the case well and made good arguments, and we appreciate it.